IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01912–EWN

GAIL OWEN,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

    This is a social security benefits appeal under 42 U.S.C. § 405(g) (2005). Plaintiff Gail Owen challenges the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income Benefits. Jurisdiction is based on 42 U.S.C. § 405(g).

### FACTS

*1.   Medical Evidence*

    Plaintiff was born on July 4, 1957, and was forty-six years old on the date of the decision by the administrative law judge ("ALJ"). (Admin. R. at 128 [filed Dec. 23, 2004] [hereinafter "Admin. R."].) Plaintiff has a high school education and one year of college and has worked in the vocationally relevant past as a nurse's aid, hotel housekeeper, home care giver, and pharmacy

salesperson. (*Id.* at 146, 237.) Plaintiff alleges that she became unable to work beginning on September 10, 2000 due to back, knee, and ankle pain.[1] (*Id.* at 140, 149, 189, 217, 221.)

Plaintiff's earliest medical records are from August 21, 2001, when Plaintiff presented to Victor G. Papari, M.D. with complaints of back pain, severe sciatica, urinary incontinence, and numbness in her legs. (*Id.* at 183.) Upon examination, Dr. Papari found that Plaintiff: (1) was overweight; (2) had a limited motion of her back and knee; and (3) had symptoms of depression. (*Id.* at 184–85.) Dr. Papari prescribed analgesics, and limited Plaintiff to working no more than eight-hour shifts and lifting no more than fifty pounds. (*Id.* at 183.)

On June 14, 2002, Plaintiff presented to Dr. Papari complaining of back pain, knee pain, and insomnia. (*Id.* at 187.) Dr. Papari advised Plaintiff to continue taking analgesics and prescribed Restoril for insomnia. (*Id.* at 187.) On June 17, 2002, X-rays of Plaintiff's lumbar spine and knees were normal. (*Id.* at 186.)

On March 5, 2003, Plaintiff first presented to Robert Carlisle, M.D. (*Id.* at 84.) Plaintiff stated to Dr. Carlisle that: (1) she was disabled due to chronic back and knee problems; and (2) Dr. Papari had denied Plaintiff's most recent application for state aid to the needy and disabled. (*Id.* at 84.) Upon examination, Dr. Carlisle found that Plaintiff was somewhat overweight and Plaintiff's hyperextension, lateral bending, and twisting were moderately limited. (*Id.*) Dr.

---

[1]The alleged onset date of Plaintiff's disability is a point of contention in this matter. Plaintiff's June 4, 2001 application for supplemental security income and June 4, 2001 disability report — in which, incidentally, Plaintiff stated that she was unable to work but also that she was currently working — both reflect an onset date of September 10, 2000. (Admin. R. at 140, 149, 189, 217, 221.) Plaintiff's June 4, 2001 application for disability benefits reflects an onset date of May 28, 2001. (*Id.* at 128.) At the May 13, 2003 hearing before the ALJ, Plaintiff testified her onset date was in September 2000. (*Id.* at 223.) At the April 16, 2004 hearing before the ALJ, Plaintiff testified that her onset date was in September 2001, and estimated September 1, 2001. (*Id.* at 237.) The ALJ's decision reflects a September 2000 onset date. (*Id.* at 18.)

Carlisle opined that Plaintiff was capable of doing sedentary work, and limited Plaintiff to: (1) lifting no more than ten pounds; and (2) sitting most of the time, with occasional standing and walking. (*Id.* at 84, 85–86.)

On April 8, 2003, Velma Campbell, M.D. performed an consultative examination of Plaintff. (*Id.* at 67–70.) Plaintiff explained to Dr. Campbell that she was in a serious motor vehicle accident in 1976, and sustained injuries resulting in chronic pain that had worsened with time. (*Id.* at 67.) Plaintiff complained of pain in her back, upper extremities, knees, ankles and right foot. (*Id.* at 67.) Plaintiff stated that she could walk about one block before experiencing pain in her knees, ankles and back, and could walk around the grocery store, but had others help her carry groceries. (*Id.*) Plaintiff also stated that she could shower and dress, but could not get in or out of a bathtub. (*Id.*) X-rays showed degenerative changes in the right knee and lumbar spine. (*Id.* at 68–69.) Dr. Campbell noted that Plaintiff gave a history of rheumatoid arthritis that was not medically documented. After examination, Dr. Campbell diagnosed Plaintiff with: (1) chronic back pain with multi-level early degenerative changes; (2) bilateral knee pain with bilateral degenerative changes; (3) effusion of both ankles of unknown etiology, possibly degenerative changes; and (4) obesity. (*Id.* at 67.) Dr. Campbell reported that Plaintiff was "at risk for depression." (*Id.* at 68–69.)

Dr. Campbell opined that complaints of pain would be consistent with Dr. Campbell's physical findings and radiology reports on Plaintiff, but Plaintiff's complaints of continuous pain were "not entirely explained by" the X-rays. (*Id.* at 69.) On April 9, 2003, Dr. Campbell completed a report on Plaintiff's physical capabilities to work, and opined that Plaintiff should be limited to: (1) lifting no more than ten pounds; (2) walking and standing no more than two hours

in an eight-hour workday; (3) sitting about six hours in an eight-hour workday, with periodic alternating sitting and standing to alleviate pain and discomfort; (4) infrequent kneeling, crouching, crawling, and stooping; (5) no balancing or climbing; (6) unlimited handling, fingering, and feeling; (7) infrequent reaching overhead and handling no more than five pounds overhead; and (8) limited exposure to temperature extremes, vibration, humidity, and hazards. (*Id.* at 71–74.)

On March 4, 2004, Dr. Carlisle referred Plaintiff to Spanish Peaks Mental Health for an evaluation of her depression.[2] (*Id.* at 90.)

## 2.   *Procedural History*

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on June 4, 2001. (*Id.* at 128–90.) The social security administration denied Plaintiff's applications on October 10, 2001. (*Id.* at 191.) On November 20, 2001, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 99.) On October 3, 2002, the ALJ held a hearing at which Plaintiff made known her wish to be represented by counsel. (*Id.* at 198–204.) Plaintiff gave no testimony regarding her case, and the ALJ continued the hearing. (*Id.*)

On February 19, 2003, the ALJ held a second hearing at which the ALJ noted that Plaintiff's counsel had requested, but not yet obtained, a medical consultative examination of

---

[2] Plaintiff's assertion that both Dr. Carlisle and Dr. Campbell treated Plaintiff's depression is surprising given that: (1) neither doctor is a mental health care specialist; (2) Dr. Carlisle referred Plaintiff to a mental health care provider; (3) Dr. Campbell opined that Plaintiff was "at risk for depression;" and (4) when asked whether she had been treated for depression, Plaintiff testified that she had been referred to a mental health care provider, but had not yet gone. (Pl.'s Reply Br. at 3; Admin. R. at 67–74, 84–86, 231–32.)

Plaintiff.  (*Id.* at 205–10.)  Plaintiff gave no testimony regarding her case, and the ALJ continued the hearing.  (*Id.*)  On May 19, 2003, the ALJ held a third hearing, at which Plaintiff testified regarding her impairments.  (*Id.* at 212–26.)  On June 23, 2003, the ALJ issued a decision holding that Plaintiff was not disabled.  (*Id.* at 41–50.)  Plaintiff requested a review of the ALJ's decision on June 27, 2003.  (*Id.* at 51–52.)  On January 8, 2004, the appeals council vacated the hearing and remanded Plaintiff's case to the ALJ, with instructions to: (1) address all relevant medical opinion evidence of record, including the opinion of the consultative examiner that Plaintiff required a sit-stand option; and (2) obtain evidence from a vocational expert to clarify the effect of Plaintiff's limitations on Plaintiff's occupational base.  (*Id.* at 53–54.)

On April 16, 2004, the ALJ held a fourth hearing, at which Plaintiff and vocational expert ("VE") Bruce Maganson testified.  (*Id.* at 227–49.)  The ALJ took administrative notice of Plaintiff's testimony from the May 19, 2003 hearing, including her testimony that she: (1) could perform light housekeeping; (2) could drive short distances before experiencing pain; (3) could sit for about thirty minutes and stand or walk for about twenty minutes; (4) could lift and carry about ten pounds; and (5) had last worked in September 2000.  (*Id.* at 216–19, 231.)  At the April 16, 2004 hearing, Plaintiff testified that since the May 19, 2003 hearing, her pain had increased, she fatigued more easily, and she had experienced "a lot of depression."  (*Id.* at 231.)  Plaintiff stated that she had not received treatment for her depression.  (*Id.* at 232.)  Plaintiff testified that she had a referral from her doctor to Spanish Peaks Mental Health for treatment, but had not yet qualified for Medicaid.  (*Id.*)

Plaintiff also gave testimony regarding her past work.  (*Id.* at 237.)  Although Plaintiff stated in her applications for disability and supplemental security benefits that she became unable

to work on September 10, 2000, Plaintiff testified that she continued to work through September 2001, and was unsure of her last day of work. (*Id.* at 140, 236–37.) Plaintiff testified regarding her duties in her past work as a home care giver and pharmacy salesperson, and stated that she could no longer perform the lifting and transferring of patients required by the former job, or the kneeling, stooping, and bending required by the latter. (*Id.* at 239–40.)

The VE testified at the hearing regarding his review of Plaintiff's vocational history on file. (*Id.* at 240–45.) The VE testified that Plaintiff's past work required light and medium exertion levels. (*Id.* at 240–41.) The VE testified that an individual similarly situated to Plaintiff — an individual of the same age and educational background as Plaintiff, limited to light work and restricted to occasional lifting and carrying up to ten pounds; non-repetitive and occasional bending, stooping, squatting, and kneeling; standing and walking no longer than thirty minutes for up to two hours out of an eight-hour day; occasional climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; occasional reaching over the shoulder restricted to five pounds; sitting for no longer than thirty to sixty minutes at a time for up to six hours out of an eight-hour day; avoiding temperature extremes and use of vibrating tools — could not perform Plaintiff's past work, but could perform light work as an office helper, informational clerk, general clerk, and telephone quotation clerk. (*Id.* at 243.) The VE noted that he did not consider depression in the hypothetical. (*Id.* at 242.) The VE stated that there was insufficient information to reach any conclusions with respect to the effects of Plaintiff's alleged depression, because Plaintiff had not been treated and was not on medication for it. (*Id.*) The VE opined that even if Plaintiff's testimony regarding her impairments were fully credible, Plaintiff could not perform her past work but would still be able to perform other work. (*Id.* at 246.)

On April 22, 2004, the ALJ issued his decision, in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 13–22.) The ALJ determined that: (1) Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work; and (2) Plaintiff could perform a "significant number of jobs in the national economy." (*Id.* at 21–22.)

In reaching his conclusion, the ALJ found that Plaintiff had not engaged in substantial gainful activity "at any relevant time." (*Id.* at 17.) The ALJ also determined that Plaintiff had medically determinable, severe impairments in the form of arthritis of the back, knees, and ankles, aggravated by the severe impairment of obesity. (*Id.*) Although these impairments are "severe," the ALJ determined that Plaintiff's impairments were not sufficiently severe to "meet or equal any of the listings in Appendix 1, Subpart P, Regulations No. 4." (*Id.* at 18.) Further, the ALJ found that the credibility of Plaintiff's "subjective complaints (and allegedly related functional limitations) [was] only fair at best," and Plaintiff's "statements and allegations of pain and disability exceed both the objective evidence of pain producing conditions and [Plaintiff's] motivation to obtain medical care for her conditions." (*Id.* at 17–18.)

Based on the evidence presented, the ALJ issued his RFC determination. The ALJ concluded that Plaintiff retained the RFC:

> to perform light exertional activity; lifting and/or carrying up to ten pounds frequently and twenty pounds occasionally; standing and/or walking no more than two hours per eight-hour day and no more than thirty minutes at a time; sitting up to six hours per day, but must be allowed to alternate sitting and standing to relieve pain at least every thirty-sixty minutes; no climbing ladders, ropes or scaffolds and only occasional balancing, kneeling, crouching, crawling or stooping; she is limited to occasional reaching over shoulder height and no more than five pounds over shoulder height; she must avoid concentrated exposure to vibrating tools and temperature extremes.

(*Id.* at 19.)  In accord with this RFC, the ALJ determined that Plaintiff could not perform her past relevant work.  (*Id.*)  The ALJ further determined that Plaintiff could still successfully perform a significant number of jobs in the local and national economy.  (*Id.* at 20.)  Therefore, the ALJ found that Plaintiff was not disabled.  (*Id.*)

Plaintiff timely requested a review of the ALJ's April 22, 2004 decision.[3]  (*Id.* at 12.)  On July 22, 2004, the Appeals Council affirmed the ALJ's decision, making it the final administrative decision for the purposes of judicial review.  (*Id.* at 9–11.)  On September 16, 2004, Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability and supplemental social security income benefits.  (Compl. [filed Sept. 16, 2004].)  On January 18, 2005, Plaintiff filed her opening brief.  (Pl.'s Opening Br. [filed Jan. 18, 2005] [hereinafter "Pl.'s Br."].)  This matter is fully briefed.

**ANALYSIS**

*1.*    *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant

---

[3] Plaintiff's form requesting a review of the ALJ's hearing decision does not reflect a date. (Admin. R. at 12.)  As it was granted, I assume Plaintiff's request to be timely.  (*Id.* at 9–11.)

> or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g). Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision. *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot reweigh the evidence, nor may it substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

### 2.     *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In proving her disability, a claimant must make a *prima facie* showing that she is unable to return to the prior work she has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2005). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that she is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits her physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents her from performing work she has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform her previous work, she is not disabled. *Id.*; 20 C.F.R.

§ 404.1520(e). If the claimant is unable to perform her previous work, the analysis progresses to the fifth and final step. The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and (2) there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### 3. *Disability Determination*

Plaintiff sets forth four arguments in support of her contention that the ALJ's decision is erroneous.[4] (Pl.'s Br.) First, Plaintiff argues that the ALJ incorrectly discounted Plaintiff's credibility. (*Id.* at 5.) Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's impairments were not sufficiently severe to meet the criteria of the listings. (*Id.* at 5–6, 7–9.) Third, Plaintiff argues that the ALJ erred in evaluating Plaintiff's physician's medical opinion. (*Id.* at 5–6, 8.) Fourth, Plaintiff argues the ALJ erred in determining Plaintiff's RFC. (*Id.* at 8–9.) I address each argument in turn.

#### a. *Plaintiff's Credibility*

Plaintiff argues that the ALJ erred in finding Plaintiff less than fully credible, and gave inadequate consideration to Plaintiff's testimony and subjective complaints regarding pain, fatigue, and disability. (*Id.* at 5, 6.) "'Credibility is the province of the ALJ.'" *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting *Brown v. Bowen*, 801 F.2d 361, 3620063 [10th Cir. 1986]). Credibility determinations made by an ALJ "should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

---

[4] Where necessary to foster conciseness and clarity, I separate, re-order, and recombine Plaintiff's substantive arguments, which overlap and compound in her complaint.

-11-

In assessing credibility, the ALJ may consider factors including the frequency of medical contacts, extensiveness of attempts to obtain relief, subjective measures of credibility, and the consistency and compatibility of the nonmedical evidence with the medical. *Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1247 (D. Colo. 1988). The ALJ found that Plaintiff was not fully credible because her statements and allegations of pain and disability exceeded both the objective evidence of pain-producing conditions and her motivation to obtain medical care for her conditions. (Admin. R. at 18–19.) Substantial evidence supports the ALJ's findings.

Plaintiff's statements are inconsistent with objective medical evidence. Indeed, after examining Plaintiff, Dr. Campbell reported that Plaintiff's complaints of continuous pain "were not entirely explained by [Plaintiff's] X-rays." (*Id.* at 69.) Further, an ALJ may consider the nature and frequency of treatment sought when assessing the intensity of Plaintiff's pain symptoms. *Luna v. Bowen*, 834 F.2d 165–66 (10th Cir. 1987). Plaintiff's attempts to obtain medical treatment were infrequent and inconsistent with her claims. Plaintiff testified and stated in her application for supplemental security income benefits that she became unable to work in September 2000, but the record reflects that Plaintiff first sought medical treatment in August 2001. (Admin. R. at 183, 189, 217.) The record also reflects that Plaintiff's subsequent attempts to obtain medical treatment are few and far between. (*Id.* at 84, 187.) In fact, the record reflects that Plaintiff only sought treatment in June 2002 and March 2003. (*Id.*)

An ALJ may also question a claimant's credibility because of inconsistencies between the claimant's testimony and other evidence in the record. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). Here, Plaintiff has given inconsistent testimony and reports as to the onset date of her disability. Plaintiff's June 4, 2001 application for supplemental security income, June 4,

2001 disability report, and May 13, 2003 testimony indicate an onset date of September 10, 2000. (Admin. R. at 140, 149, 189, 217, 221, 223.) Plaintiff's June 4, 2001 application for disability benefits reflects an onset date of May 28, 2001. (*Id.* at 128.) Plaintiff testified April 16, 2004 that her onset date was on or about September 1, 2001. (*Id.* at 237.) The ALJ properly found Plaintiff to be less than fully credible, thus the ALJ also properly disregarded Plaintiff's testimony regarding her pain, fatigue, and disability.

### b.     *Plaintiff's Impairments*

Plaintiff argues the ALJ's determination at step three that Plaintiff's impairments were not sufficiently severe to meet the listings was erroneous. (Pl.'s Br. at 5, 6–7.) Interestingly, despite demonstrating a strong grasp of the history of obesity as a listing by presenting a précis thereof, Plaintiff does not state which listing she might meet. (*Id.* at 6–7.) Instead, Plaintiff generally alleges that the ALJ gave inadequate consideration to Plaintiff's depression and obesity in assessing the severity of Plaintiff's impairments. (*Id.* at 5, 9.)

Plaintiff suggests that the ALJ erred by not taking into account Plaintiff's depression in assessing the severity of Plaintiff's impairments. (*Id.* at 6, 9.) An ALJ may consider a claimant's failure to obtain therapeutic treatment in evaluating the severity of alleged mental limitations. *Foy v. Barnhart*, 139 Fed. Appx. 39, 43 (10th Cir. 2005) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 [10th Cir. 2000]). The ALJ found that there was "no treatment or medication and insufficient medical evaluation to establish [in Plaintiff] a medically determinable impairment from depression or other mental condition." (Admin. R. at 19.) The evidence on record shows that — although Plaintiff has discussed her alleged depression with her medical doctors and testified that she feels "a lot of depression" — Plaintiff has not received therapeutic mental health treatment.

(*Id.* at 69, 90, 231–32.)  Thus, the ALJ was supported by substantial evidence in his assessment of the severity and effects of Plaintiff's alleged depression.

Plaintiff also argues that the ALJ failed to consider the effects of Plaintiff's obesity with respect to her impairments.  (Pl.'s Br. at 5.)  Plaintiff's argument is rather perplexing in light of the ALJ's express statement that Plaintiff was severely impaired by "arthritis . . . *aggravated by obesity, which is also a severe impairment*."  (Admin. R. at 17.) (emphasis added)  It is patently clear from the face of the ALJ's decision itself that the ALJ considered Plaintiff's obesity and its effects on Plaintiff's other impairments.

Plaintiff also admonishes the ALJ for failing to analyze the effect of obesity on Plaintiff's ability to ambulate.  (Pl.'s Br. at 8.)  The ALJ expressly stated that he considered medical opinions reflecting judgements about the nature and severity of Plaintiff's alleged impairments and resulting limitations.  (Admin. R. at 19.)  Poignantly, Dr. Campbell found that Plaintiff walked without a limp and without the use of assistive devices.  (*Id.* at 67.)  Furthermore, nothing in the record suggests that the effects of Plaintiff's obesity leave her unable to perform any work whatsoever.  To the contrary, every medical professional who has examined Plaintiff has opined that Plaintiff is capable of performing some level of work.  (*Id.* at 84–86, 69–74,175–81,183.)

Moreover, contrary to Plaintiff's allegations, the record shows that the ALJ gave specific attention and consideration to Plaintiff's obesity and alleged depression, and the effects thereof on Plaintiff's capabilities.  In making his determination, the ALJ considered the entire record and the effects of each of Plaintiff's medically determinable impairments, individually and in combination, including arthritis of the back, knees and ankles, and obesity.  (*Id.* at 17.)  As noted in his

decision, the ALJ considered the following requisite seven factors with respect to Plaintiff's subjective allegations:

> (1) the extent of [Plaintiff's] daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and adverse side effects of medication; (5) treatment, other than medication, for relief of the symptoms; (6) any measures other than treatment [Plaintiff] uses to relieve [her] pain or other symptoms; [and] (7) any other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

(*Id.* at 18.) The ALJ addressed Plaintiff's various impairments, and nothing suggests that the ALJ did not consider all of Plaintiff's impairments in combinations. *See Eggleston*, 851 F.2d at 1247. Therefore, I conclude the ALJ was supported by substantial evidence and did not err at step three in determining the severity of Plaintiff's impairments.

### c. *Plaintiff's Physician's Opinion*

Plaintiff asserts that the ALJ "erred in rejecting consulting physician Campbell's opinion evidence that [P]laintiff should be limited to lifting no more than [ten] pounds." (Pl.'s Br. at 6.) Importantly, as a one-time examining physician, Dr. Campbell is a nontreating source. "Nontreating source means a physician . . . who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. "[F]indings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey*, 816 F.2d at 515; *see also Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991) (noting the court has "consistently discounted the opinions of non-treating physicians who have seen the patient only once, at the request of the Social Security Administration"). Further, the ALJ notes — and Dr. Campbell's consultative examination report itself confirms — that Dr. Campbell's findings are based on examination of Plaintiff and information given by Plaintiff.

-15-

(Admin. R. at 19, 69.) The ALJ explained that he discredited Dr. Campbell's report because Dr. Campbell "appears to assume [Plaintiff's] . . . complaints are accurate." (*Id.* at 19.) As discussed (at *Analysis* § 3a *supra*), the ALJ properly found Plaintiff to be less than fully credible. Accordingly, the ALJ was supported by substantial evidence and did not err in disregarding Dr. Campbell's opinion.

Moreover, "[a]n ALJ should '[g]enerally . . . give more weight to opinions from [a claimant's] treating sources.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (alterations in original) (quoting 20 C.F.R. § 404.1527[d][2]). Plaintiff's treating physician, Dr Papari, found that Plaintiff was capable of lifting up to fifty pounds. (*Id.* at 181, 183.) It is quite difficult to discern how Plaintiff could have been prejudiced or otherwise harmed by the ALJ's more restrictive limitations in his RFC determination.

### d. *Plaintiff's RFC*

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's depression, obesity, and complaints of pain in assessing Plaintiff's RFC. (Pl.'s Br. at 8–10.) As set forth above (at *Analysis* § 3b *supra*), the ALJ gave proper consideration to Plaintiff's depression and obesity in arriving at his decision. Further, as set forth above (at *Analysis* § 3a *supra*), the ALJ properly found Plaintiff to be less than fully credible, and thus properly disregarded Plaintiff's subjective complaints and testimony. (Admin. R. at 18–19.)

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007–10 (10th Cir. 1996). The ALJ indicates that he considered Plaintiff's entire record, despite not discussing at length every discrete medical condition noted by every examining physician or alleged by Plaintiff.

(Admin. R. at 16.) Accordingly the ALJ is supported by substantial evidence and did not err at step five in determining Plaintiff's RFC.

*4.     Conclusion*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is AFFIRMED.

Dated this 12th day of December, 2005.

                                            BY THE COURT:

                                            s/ Edward W. Nottingham
                                            EDWARD W. NOTTINGHAM
                                            United States District Judge